# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**PATRICIA SAVAGE,**                            Case No. 4:19 CV 1208

    Plaintiff,                                   Judge Benita Y. Pearson

    v.                                           Magistrate Judge James R. Knepp II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                          **REPORT AND RECOMMENDATION**

## INTRODUCTION

Plaintiff Patricia Savage ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to Local Rule 72.2. (Non-document entry dated May 28, 2019). Following review, and for the reasons stated below, the undersigned recommends the decision of the Commissioner be reversed and remanded for further proceedings.

## PROCEDURAL BACKGROUND

Plaintiff filed for DIB in July 2016, alleging a disability onset date of January 1, 2016. (Tr. 286). Her claims were denied initially and upon reconsideration. (Tr. 210-13, 220-22). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 227-28). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on June 28, 2018. (Tr. 143-75). On August 31, 2018, the ALJ found Plaintiff not disabled in a written decision. (Tr. 127-37). The Appeals Council denied Plaintiff's request for review, making the

hearing decision the final decision of the Commissioner. (Tr. 1-4); *see* 20 C.F.R. §§ 404.955, 404.981. Plaintiff timely filed the instant action on May 28, 2019. (Doc. 1).

## FACTUAL BACKGROUND[1]

Personal Background and Testimony

Plaintiff was born in October 1964, making her 51 years old on her alleged onset date, and 53 years old at the time of her hearing. *See* Tr. 286. She alleged disability due to arthritis, migraines, and anxiety. (Tr. 326). Plaintiff had past work cleaning hospital rooms and apartments (Tr. 151, 153), and stocking supplies and running a cash register in a restaurant (Tr. 154).

Plaintiff believed she could not work due to pain in her back and hips after lifting "anything of any weight"; the pain caused difficulty walking. (Tr. 155). She had intense pain after ten to fifteen minutes of sitting or walking. *Id*. Severe pain in both hips also prevented her from sleeping through the night. (Tr. 167).

Plaintiff underwent injections for back pain as well as a radiofrequency ablation ("RFA") which only helped for "about a month" before the pain resumed. (Tr. 156-57).

Plaintiff also had right knee pain which was doing "fairly well for the most part" at the time of the hearing. (Tr. 161). She treated her pain with heat and medications. (Tr. 161-62).

Plaintiff lived with her husband. (Tr. 149). She occasionally drove, limiting herself to two- or three-mile trips around town. (Tr. 150). Plaintiff washed dishes and dusted but needed to stop and sit every ten or fifteen minutes due to pain. (Tr. 156). Her husband performed the other

---

1. Plaintiff only challenges the ALJ's evaluation of her physical, not her mental impairments. *See* Doc. 1, at 9-17; Therefore, the undersigned only summarizes those records relevant to her arguments. *Cf. Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546, 553 (6th Cir. 2008) (issues raised for first time in reply brief are waived); *Kennedy v. Comm'r of Soc. Sec.,* 87 F. App'x 464, 466 (6th Cir. 2003) (underdeveloped arguments waived).

household chores such as sweeping and scrubbing. *Id*. The day prior to the hearing, Plaintiff woke around 8:00 AM and sat on the edge of her bed for approximately a half hour due to pain. (Tr. 162-63). She then got herself a drink and sat to take her medications. (Tr. 163). Throughout the day, Plaintiff watched a little television and performed basic household chores such as dishes and laundry. *Id*. Her husband lifted the laundry basket and moved it around the house for her. (Tr. 167-68). She sat and rested throughout the day while performing her chores. (Tr. 163). She and her husband ordered a pizza for dinner because she was in pain and could not make dinner. *Id*. Plaintiff always went to the grocery store with her husband because she needed assistance. (Tr. 163-64). Plaintiff went to church; she ate at a restaurant once per month. (Tr. 164). She had difficulty walking to and from these places. *Id*. Plaintiff testified she was unable to lift a gallon of milk. (Tr. 167).

Relevant Medical Records

*Prior to Alleged Onset Date*

In June 2014, Plaintiff sought treatment with Bina Mehta, M.D., at the Spine and Pain Institute for constant, moderate left hip pain which radiated to her left leg. (Tr. 406). The pain was aggravated by lying down and alleviated with heat. *Id*. Plaintiff rated her overall pain at 6-7 out of 10, with her left lumbar pain at an 8. *Id*. On examination, Plaintiff had a wide-based gait, normal posture and muscle tone, pain to palpation in her left gluteal and paraspinous muscles, and a positive FABER test on the left side. (Tr. 409-10). She had decreased active range of motion in her left hip, normal bilateral lower extremity strength, and a normal lower extremity neurovascular exam. (Tr. 410). She had active, pain free range of motion in her lumbar spine. *Id*. Dr. Mehta diagnosed myalgia, myositis, lumbosacral spondylosis, enthesopathy of the hip, and joint pain (pelvic) (Tr. 411); she administered a left gluteal joint injection with aspiration. (Tr. 410-11). She

continued Plaintiff on Norco. (Tr. 406, 411). Plaintiff returned to Dr. Mehta in July reporting constant, burning pain in her left hip which radiated to her left thigh. (Tr. 412). Dr. Mehta noted similar examination findings (Tr. 415-16); she referred Plaintiff for a left piriformis injection under fluoroscopy (Tr. 416). Plaintiff reported "about 75% benefit" from the injection after fifteen days; she was pain free in the buttock "most of the time" but still experienced left hip pain. (Tr. 420).

Plaintiff underwent a lumbar RFA at the left L3/4, L4/5, and L5/S1 in October 2014. (Tr. 462). She returned to Dr. Mehta[2] the following week reporting she fell down the stairs when her right leg gave out. (Tr. 464). Plaintiff reported numbness and pain in her right calf and hip. *Id*. Dr. Mehta ordered a CT scan of the lumbar spine. (Tr. 468). Plaintiff underwent a second lumbar RFA in mid-November. (Tr. 471-72).

A November CT of the lumbar spine revealed no acute osseous abnormality of the lumbar spine, mild multilevel disc bulges and spondylosis, and no evidence of significant central canal narrowing. (Tr. 404). An EMG later that month was significant for a possible SI radiculopathy (right side) and showed denervation in the gastrocnemius. (Tr. 399-400).

In December, Plaintiff reported a two-week period of relief following the RFA, however, she continued to have lower back pain and intermittent numbness and pain in her left leg. (Tr. 477). She needed prescription medication to "take the edge off" to maintain her activities of daily living and work. *Id*. On examination, Dr. Mehta found she had a wide gait and decreased active range of motion in her left hip. (Tr. 480). Her bilateral neurovascular examination and lower extremity strength were normal. *Id*. Dr. Mehta prescribed a five-day course of prednisone (Tr. 482), and, two weeks later, performed a trigger point injection at the right peroneal nerve (Tr. 484-

---

2. This and a later record from the Spine and Pain Institute are cosigned by Dr. Mehta and nurse practitioner, Karen Hodakievic. *See* Tr. 469, 482.

85). By the end of the month, Plaintiff reported the injection decreased her pain by 88%; the pain was "intermittent" and "very manageable". (Tr. 487).

Plaintiff underwent a lumbar medial nerve branch block in late March 2015. (Tr. 507). By early April, Plaintiff reported the nerve block helped "by 75% initially", but she felt the relief was slowly tapering off. (Tr. 509). She further reported that her back pain was made worse by lifting and bending at work. *Id*. Plaintiff continued to rely on prescription medications. *Id*. She underwent a SI joint injection in July 2015. (Tr. 539).

Plaintiff treated with Maged Fouad, M.D., at Comprehensive Pain Management Specialists in October 2015. (Tr. 646). She reported constant, throbbing, sharp back and hip pain. *Id*. The pain was worse with standing or sitting for long periods and lifting; medications alleviated it. *Id*. On examination, Dr. Fouad noted painful extension and lateral bending to both sides and pain with facet palpation (bilaterally). (Tr. 647). He found Plaintiff to have normal gait, motor strength bilaterally, and reflexes; she had negative straight leg raises. (Tr. 648). Dr. Fouad assessed low back pain and spondylosis of the lumbar region without myelopathy or radiculopathy. *Id*. He prescribed Norco and Mobic and ordered a lumbar nerve block. *Id*. Plaintiff returned to Dr. Fouad in late November reporting 50-75% relief from a lumbar nerve block performed earlier that month. (Tr. 637); *see also* Tr. 641-42. His examination findings were unchanged. (Tr. 638).

*After Alleged Onset Date*

Plaintiff reported continued back and hip pain at a January 2016 appointment with Dr. Fouad. (Tr. 631). Dr. Fouad noted similar examination findings to those from Plaintiff's November appointment. (Tr. 631-32). He ordered another lumbar RFA (Tr. 633), which he performed in

February (Tr. 628-29). Plaintiff reported 50-75% relief from the procedure after six days (Tr. 624), and Dr. Fouad noted similar examination findings (Tr. 625).

February 2016 x-rays of Plaintiff's hips revealed mild degenerative changes in the right hip and degenerative disc disease of the lower lumbar spine. (Tr. 650).

Plaintiff underwent another lumbar RFA in March. (Tr. 621-22). She reported less than 50% relief lasting only one to five days. (Tr. 617). On examination, Plaintiff had limited painful range of motion to her right side and pain with facet palpation in the lumbar area. (Tr. 618). In April, she underwent bilateral joint injections in her hips. (Tr. 615-16).

In mid-April, Plaintiff reported "burning and stabbing pain [ ] coming back" in her low back; she received 60% relief from hip injections. (Tr. 611). On examination, she had painful extension in the lumbar spine, painful lateral bending bilaterally, and pain with facet palpation bilaterally. (Tr. 612). She had a normal gait, negative straight leg raises, and limited, painful, range of motion in both hips (more on the right). *Id.* Dr. Fouad refilled Plaintiff's medications and recommended she stay active. (Tr. 613). These examination findings were unchanged in May. (Tr. 608-09). Dr. Fouad added a TENS unit to Plaintiff's treatment plan. (Tr. 610).

In July, Plaintiff reported using the TENS unit several times daily. (Tr. 598). She had improvement in pain and function and was able to decrease her prescription medication use as a result. *Id.* Later that month, Plaintiff reported a burning and stinging sensation in her left hip. (Tr. 595). Plaintiff had a normal gait and negative straight leg raises, but pain with facet palpation in her lumbar spine and painful extension and lateral bending bilaterally. (Tr. 595-96).

At a January 2017 appointment with Dr. Fouad, Plaintiff reported increased back and bilateral hip pain accompanied by pressure. (Tr. 777). On examination, Plaintiff had pain with facet palpation in her lumbar spine bilaterally, left worse than right. (Tr. 778). She had negative

6

straight leg raises, a normal gait, and limited range of motion in her right hip, full on the left. *Id*. Plaintiff had trochanteric bursa tenderness on the right side. *Id*. Dr. Fouad diagnosed low back pain, bilateral hip pain, and spondylosis in the lumbar region; he refilled Plaintiff's prescriptions and noted Plaintiff would consider repeating lumbar injections when she obtained health insurance coverage. (Tr. 779).

In March 2017, Plaintiff reported continued back and hip pain. (Tr. 773). On examination, Dr. Fouad noted Plaintiff had difficulty rising from a seated position. (Tr. 774). She has pain with facet palpation bilaterally, left worse than right and painful lateral bending bilaterally as well as painful range of motion in her lumbar spine. *Id*. Plaintiff had trochanteric bursa tenderness on the left, a normal gait, and limited range of motion in the right hip, full in the left. *Id*. By the end of the month, she underwent a trigger point injection in the trochanteric bursa. (Tr. 771-72).

Plaintiff established care with Gregory Facemyer, M.D., in March 2017. (Tr. 970). She reported, *inter alia*, low back pain with arthritis and osteoarthritis. *Id*. On examination, Plaintiff had a normal gait and station and normal strength and full range of motion in both lower extremities. (Tr. 972). Dr. Facemyer assessed, *inter alia*, low back pain and prescribed pain medication. *Id*.

In May, Plaintiff met with orthopedic surgeon Raymond Duffett, M.D. (Tr. 991). She reported burning pain in the medial and lateral aspect of the right knee; she was eleven years removed from a patellofemoral replacement. *Id*. Examination revealed she could fully extend the right knee, flex to 120 degrees, and had tenderness in the medial and lateral compartments. *Id*. X-rays revealed some increasing arthritis in the medial and lateral compartments. *Id*. Dr. Duffett prescribed Voltaren gel. *Id*.

Plaintiff began physical therapy for her lower back and right knee in August 2017. (Tr. 1003). Providers recommended therapy sessions twice per week for twelve weeks. (Tr. 1005). Plaintiff was discharged in September due to a lack of progress as the therapy was not helping. (Tr. 1009). Her prognosis at discharge was fair. (Tr. 1010).

Plaintiff underwent an RFA and a facet medial branch block of the lumbar region in October 2017. (Tr. 849-50). She underwent an RFA of the lumbar medial branch nerves in December 2017. (Tr. 843-44).

Justin Drummond, M.D., a physician in Dr. Fouad's practice, performed a lumbar epidural injection in January 2018. (Tr. 841). Dr. Drummond observed Plaintiff rose from a seated position with difficulty, had lumbar pain with extension, and had tenderness in the paravertebral lumbar muscles. (Tr. 839-40). He found Plaintiff had painful range of motion in lateral bending bilaterally; she had negative straight leg raises and a normal gait. *Id*. Dr. Drummond performed lumbar epidural steroid injections in February. (Tr. 944-45). At a March visit, Plaintiff reported 80% relief from her February injection which lasted for five days. (Tr. 940). Dr. Drummond observed similar pain findings from those of her January visit, but noted a positive straight leg raise on the left. (Tr. 941). Plaintiff underwent another lumbar epidural steroid injection in April. (Tr. 950-51).

In May 2018, Plaintiff reported continued back and bilateral hip pain and cramping in her legs. (Tr. 955). Dr. Drummond noted a normal gait and pain in her lumbar spine with extension and tenderness of the paravertebral muscles; she had painful lateral bending bilaterally. (Tr. 956). He again noted a positive straight leg raise on the left side. *Id*. She did not receive any benefit from her latest epidural injections. (Tr. 957). A CT scan of the lumbar spine in late May revealed multilevel areas of degenerative disc bulging without evidence of disc herniation. (Tr. 967). There were degenerative changes, but no acute bony or soft tissue abnormalities present. *Id*.

8

Opinion Evidence

In August 2016, State agency physician Teresita Cruz, M.D., proffered a physical residual functional capacity assessment. (Tr. 184-87). She opined Plaintiff could occasionally lift/carry twenty pounds and frequently lift/carry ten pounds. (Tr. 185). Plaintiff could sit or stand/walk for approximately six hours each in an eight-hour workday with normal breaks. *Id*. Dr. Cruz further opined Plaintiff could frequently climb ramps and stairs, never climb ladders, ropes, or scaffolds, and occasionally stoop, kneel, crouch, or crawl. (Tr. 185-86). She found Plaintiff unlimited in her ability to balance. (Tr. 185). Finally, Dr. Cruz opined Plaintiff should avoid concentrated exposure to extreme cold, vibrations, and workplace hazards such as machinery and heights. (Tr. 186). William Bolz, M.D., concurred with these findings in December 2016 (Tr. 201-03).

VE Testimony

A VE appeared and testified at the hearing before the ALJ. *See* Tr. 169-73. The ALJ asked the VE to consider a hypothetical individual with Plaintiff's age, education, and vocational background who was limited in the ways he ultimately determined Plaintiff to be. (Tr. 171). The VE opined that such an individual could perform Plaintiff's past work as a housekeeping cleaner as it is typically performed at the light exertional level. (Tr. 170-71).[3] The VE further opined such an individual could perform work as a cashier, furniture rental consultant, or a cafeteria attendant. (Tr. 172).

ALJ Decision

In a decision dated August 31, 2018, the ALJ concluded Plaintiff met the insured status requirements of the Social Security Act through September 30, 2021 and had not engaged in

---

3. The VE also opined that Plaintiff actually performed this work at the medium exertional level; the hypothetical individual could not perform the work as Plaintiff actually performed it. (Tr. 170-71).

9

substantial gainful activity since January 1, 2016 (her alleged onset date). (Tr. 129). The ALJ found she had severe impairments of: degenerative disc disease of the lumbar spine, osteoarthritis of the bilateral hips and right knee, obesity, and migraine headaches. *Id.* However, none of these impairments (alone or in combination) met or equaled the severity of a listed impairment. (Tr. 131). Next, the ALJ concluded Plaintiff had the residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b) except that she can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to unprotected heights, moving mechanical part[s], and operating a motor vehicle. [Sh]e must also avoid concentrated exposure to extreme cold and vibration.

(Tr. 132). He further found Plaintiff capable of performing her past relevant work as a housekeeping cleaner, an unskilled job at the light exertional level, which was previously performed by her at the medium exertional level. (Tr. 135). Thus, the ALJ concluded Plaintiff had not been under a disability, as defined by the Social Security Act, from January 1, 2016 through the date of his decision. (Tr. 136).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or

indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.*

Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff raises a single objection to the ALJ's decision – the RFC is unsupported by substantial evidence. Specifically, she alleges the ALJ made inaccurate statements about the relief she received from her lumbar and hip treatments and otherwise ignored records which showed worsening of these conditions. She further alleges the ALJ incorrectly relied on the opinions of the State agency physicians who did not have access to almost two full years of medical records which included relevant examinations and treatments. Plaintiff argues these errors resulted in the ALJ wrongfully determining she could perform light[4] work. The Commissioner obviously disagrees, arguing the RFC is adequately supported. For the following reasons, the undersigned finds the RFC unsupported by substantial evidence and recommends the decision be reversed.

A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence *Id.* § 404.1529. While an ALJ must also consider and weigh medical opinions, the RFC determination is expressly reserved to the Commissioner. *Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 198 (6th Cir. 2004); 20 C.F.R. §§ 404.1527, 404.1596. The Court must affirm "so long as substantial evidence also supports the

---

4. A "light" work finding is significant because, if Plaintiff were found to be able to perform only "sedentary" work, such a determination would automatically require a finding of disabled for someone (like Plaintiff) who was "closely approaching advanced age" at the time of the decision. *See* 20 C.F.R. Part 404, Subpart P, App'x 2 § 201.14.

conclusion reached by the ALJ" even if substantial evidence or indeed a preponderance of the evidence *also* supports a claimant's position. *Jones*, 336 F.3d at 477.

Here, the ALJ determined Plaintiff could perform light work with additional postural and environmental restrictions. (Tr. 132). Plaintiff alleges certain errors and omissions made while forming the RFC do not support his finding that she could perform light work and therefore return to her past relevant work as a housekeeper/cleaner. The undersigned addresses her arguments in turn.

Plaintiff first alleges the ALJ made inaccurate statements about the relief she received from lumbar and hip treatments and otherwise ignored records which showed her condition worsening in these areas. (Doc. 11, at 10-14). Plaintiff's assessment is accurate. At points in his decision, the ALJ highlights Plaintiff's "good response" or "good symptom control" from injections and treatments as support for his RFC. Tr. 133 ("The claimant generally reported a good response to the injection therapy and medication regimen."); *Id*. ("However, she has undergone a course of conservative treatment that has often worked to control her symptoms of pain."); *Id*. ("[T]he claimant reported significant pain improvement with epidural steroid injections."). These statements are unsupported by the record. Plaintiff consistently reported limited, temporary relief from her treatments and, on one occasion, no relief at all. *See* Tr. 624 (50-75% relief from a February 2016 RFA lasting only one week); Tr. 617 (less than 50% relief from a March 2016 RFA lasting only one to five days); Tr. 611 (60% relief from hip injections after seven days); Tr. 595 (continued back and hip pain after starting TENS unit); Tr. 940 (80% relief from February 2018 epidural injections lasted only five days); Tr. 957 ("no benefit" from last epidural injection). These records certainly do not reflect "significant pain improvement" or demonstrate symptom control as the ALJ stated. (Tr. 133).

13

The ALJ also cited Plaintiff's examination findings in support of his RFC, referring to them as "unremarkable but for some low back pain with extension and lateral bending". (Tr. 133); *see also id.* ("Exams showed a normal gait, negative straight leg raises, and normal strength"). This "unremarkable" label is also not entirely accurate as the ALJ leaves out findings of limited range of motion in the hips and lumbar region as well as instances where she had positive straight leg raises and trochanteric bursa tenderness. (Tr. 632, 634-35, 595-96) (painful range of motion in the lumbar spine); (Tr. 618) (painful range of motion in the hips); (Tr. 612, 608, 625, 778) (painful range of motion in the lumbar spine and hips); (Tr. 774, 778) (positive trochanteric bursa tenderness; (Tr. 941, 956) (positive left-side straight leg raises).

Commissioner argues the ALJ properly weighed the evidence here and Plaintiff has not demonstrated his decision was outside his "zone of choice". (Doc. 13, at 11). However, as noted, the ALJ relied on Plaintiff's symptom control and "unremarkable" examinations in determining she could perform light work. A decision is supported by substantial evidence only "when a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citing *Walters*, 127 F.3d at 528). The undersigned cannot conclude an RFC is supported by substantial evidence where, as here, the ALJ misstates (or omits) evidence. On remand, the ALJ should re-examine Plaintiff's lumbar and hip treatment records, and the effectiveness of her treatments, through a more careful lens.

Plaintiff also argues the ALJ erred in relying on the State agency physicians' opinions because they were rendered without the benefit of nearly two years of lumbar and hip treatment records. (Doc. 11, at 15). However, an ALJ may rely on an outdated State agency opinion so long as he considers the post-dated medical records the physician was not able to review. *See McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (indicating that an ALJ's reliance

14

upon state agency reviewing physicians' opinions that were outdated was not error where the ALJ considered the evidence that was developed post-dating those opinions); *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 513 (6th Cir. 2013) ("Even if [a State agency physician's] RFC was completed without knowledge of these issues, however, the record reflects that the ALJ considered them."). Here, the ALJ expressly discussed Plaintiff's hip and lumbar examinations and treatments dated after August and December 2016 when the State agency physicians offered their opinions. *See* Tr. 133-34. Thus, the undersigned finds no error.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB unsupported by substantial evidence and recommends the decision be reversed and remanded pursuant to Sentence Four of 42 U.S.C. § 405(g).

    s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).